Stefano PINO

v.

MAPLEWOOD PACKING COMPANY
and/or Liberty Mutual
Insurance Company.

Supreme Judicial Court of Maine.

July 11, 1977.

Stanley W. Brown, Jr., Belfast, for plaintiff.

Rudman, Rudman & Carter, by Richard J. Relyea, Bangor, for defendants.

Before DUFRESNE, C. J. and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

WERNICK, Justice.

Stefano Pino has appealed from a pro forma decree of the Superior Court (Waldo County) affirming a dismissal by the Industrial Accident Commission (Commission) of his petition for award of workmen's compensation.

We sustain the appeal.

On March 16, 1970 petitioner, a veterinarian employed by Maplewood Packing Company (Maplewood), slipped on ice in the company's parking lot and injured his right shoulder. He forthwith reported the accident to Frances Farris, employed by Maplewood as an industrial nurse, who thereupon filed a report of the accident with Maplewood's workmen's compensation insurance carrier, Liberty Mutual Insurance Company.

For approximately two months after the injury, petitioner treated himself by placing his right arm in a sling. Having observed no improvement in the pain and restricted movement he was experiencing, petitioner sought medical treatment, commencing in May, 1971, from a series of doctors. Toward the end of 1971, petitioner, still discouraged by lack of progress, began to think about going out-of-state for further expert assistance, but he did nothing at that time.

At last, in March of 1974, petitioner secured advice which ultimately led to his

recovery. In that month resort to an arthrogram led to the diagnosis that petitioner had sustained a tear of the rotator cuff. Surgery was recommended. In April, 1974 petitioner underwent a successful operation in New York for the torn rotator cuff.

It was at that time that petitioner became aware that Maplewood's insurance carrier considered his claim for compensation barred by expiration of the two-year period for the filing of a petition.[1] Petitioner nevertheless filed a petition for award of compensation in November, 1974. He maintained that the prior expiration of the two-year period for filing such petition did not bar his compensation claim because (1) petitioner was under a "mistake of fact" as to the nature of the injury, and (2) in any event, conduct imputable to Maplewood upon which petitioner had relied precluded assertion of the bar by Maplewood. After hearings the Commission found against petitioner on both issues, and petitioner now assigns those rulings as reversible error.

### 1—The "Mistake of Fact" Issue

Relying upon the provision in 39 M.R.S.A. § 95 which authorizes the filing of a petition for compensation "within a reasonable time" after the two-year limitation period if there was no timely filing

"because of mistake of fact as to the cause and nature of the injury",

petitioner maintains that the original diagnosis of his sore shoulder as a sprain or subluxation, uncorrected until four years after the accident, constituted a "mistake of fact" within the meaning of § 95.

■ The Commission rejected petitioner's contention, saying:

". . . [Petitioner] has known from the date of his fall that his injury was caused by his fall and that it consists of damage to the right shoulder and arm . . . .. He may not have been given a

specific medical diagnosis but certainly he had in mind all along the general nature of the injury."

We agree with this ruling of the Commission.

The language of the statute, the evident purpose furthered and our prior interpretations of predecessors of § 95 are in accord with the Commission's analysis.

■ Section 95 refers to a mistake concerning the "nature" of the injury.[2] The common meaning of "nature", according to Webster's Third New International Dictionary of the English Language (1961), is:

"The essential character or constitution of something . . .; *esp*: the essence or ultimate form of something."

We think that this definition more readily fits a general description of the injury, i. e., damaged shoulder, than a specific diagnosis in connection therewith:—tear of the rotator cuff.

■ The manifest purpose of the "mistake of fact" language confirms this interpretation of it. In general, statutes of limitation seek to reconcile the injured party's interest in compensation with the liable party's interest in a terminal date to litigation. See, e. g., *Norton v. Penobscot Frozen Food Lockers, Inc.*, Me., 295 A.2d 32, 35 (1972). The specific provision of § 95 under scrutiny establishes in favor of the injured employee an exception to the general rule. The legislative motivation is readily apparent:—when there is

"mistake of fact as to the cause and nature of the injury",

it would be unfair to bar the claim *because the employee is unaware of it.* Thus, the circumstances contemplated include those situations where the injury is latent or its relation to the accident unperceived. They do not include instances where, as here, the employee knows of the injury and its cause.

---

1. The applicable provision is 39 M.R.S.A. § 95, which then read in pertinent part:

"Any employee's claim for compensation under this Act shall be barred unless . . . a petition . . . shall be filed within 2 years after the date of the accident."

Maplewood did pay medical expenses incurred by petitioner within that time.

2. Petitioner raises no claim as to the "cause" of his incapacitated shoulder.

In such a case the employee has notice of his claim and can proceed accordingly regardless of the ultimate diagnosis; the diagnosis only determines the extent of the injury, not its existence.

Our cases dealing with earlier versions of § 95 support this approach. In the two instances in which this Court has upheld the late filing of a petition based on statutory "mistake", the injury in question was not discovered until after the applicable limitation period. *Brackett's Case*, 126 Me. 365, 138 A. 557 (1927); *Francis v. H. Sacks and Sons*, 160 Me. 255, 203 A.2d 42 (1964).

Petitioner takes nothing by his assertion of "mistake of fact" under § 95 of the Act.

### 2—The Conduct of the Employer Issue—"Waiver" and "Estoppel."

In its approach to petitioner's undertaking to avoid the bar which would ordinarily arise from his failure to file a timely petition for award of compensation the Commission subdivided petitioner's contention into the two separate concepts of "waiver" and "estoppel."

The *only* findings of fact made by the Commission bearing on waiver and estoppel were:

(1) "Mrs. Farris told Dr. Pino more than once, that she thought his case was 'covered' because an employer's first report had been submitted";

(2) " . . . [Nurse Farris] was aware that . . . [Dr. Pino] was obtaining medical treatment for his injured shoulder from different doctors";

(3) "[b]efore November 1974, Mrs. Farris was not aware that a Petition for Award of Compensation had to be filed within two years"; and

(4) " . . . [Nurse Farris] never had anything to do with filing . . . petitions [for award of compensation]."

■ As to waiver, properly conceived by the Commission as the intentional relinquishment of a known right, the Commission ruled, correctly, that Mrs. Farris' ac-

tions, as imputable to Maplewood, could not constitute a waiver by Maplewood of its right to assert Dr. Pino's late filing of a petition for award as a bar to his claim because Mrs. Farris

"didn't know of this requirement and, therefor[e], could not voluntarily set it aside."

The Commission disposed of the estoppel contention with no more than the summary conclusory statement:

"We do not believe that the actions or statements of Mrs. Farris, or of anyone else who participated for Maplewood, are grounds for ruling that Maplewood is estopped from asserting that Dr. Pino's rights are barred by the two year filing limitation of Paragraph 95 of the Act."

We find it highly significant, however, that the Commission stated this ultimate conclusion *immediately* after it had ruled, concerning waiver, that Mrs. Farris *lacked knowledge* of the two-year filing requirement. Moreover, we must take the Commission's generalized mention of the "actions or statements of Mrs. Farris . . ." as a reference *only* to those activities of Mrs. Farris concerning which the Commission had made the particularized findings of fact above-described.

With the Commission's estoppel decision thus postured, we must conclude that the record discloses affirmative indication that the Commission's evaluation of the estoppel question may have proceeded on the conception that it was essential to an "estoppel in pais" against Maplewood that Nurse Farris actually knew about the two-year filing requirement and, hence, her representations to Dr. Pino—that the submission of the employer's first report had sufficiently covered his claim—were knowingly, not inadvertently, misleading representations.

■ This is an erroneous view of the necessary elements of estoppel in pais. Unlike waiver, which, taken as the voluntary relinquishment of a known right, concentrates on fundamentally subjective considerations, estoppel in pais is concerned with essentially objective factors. Estoppel

flows from the actual consequences produced by the conduct of A upon B regardless of whether A subjectively intended the consequences, and which resulted because, objectively evaluated, B has justifiably relied upon A's conduct.

■ It is, therefore, not an essential element of estoppel in pais that the party subjected to it shall have *knowingly or intentionally* misled the other person. As this Court explained in *Stubbs v. Franklin & Megantic Railway Company*, 101 Me. 355, 362, 64 A. 625, 627 (1906):

> "The doctrine of equitable estoppel should be applied with great care. It is not necessary, however, that there should be *intentional* moral wrong. There may be such negligence as is the equivalent of fraud." (emphasis supplied)

See also: *Holt v. New England Telephone & Telegraph Company*, 110 Me. 10, 12, 85 A. 159 (1912); *Smith v. Phillips National Bank*, 114 Me. 297, 302–303, 96 A. 217 (1915); *Milliken v. Buswell*, Me., 313 A.2d 111, 119 (1973). Estoppel in pais rests on the principle

> "'. . . if . . . [one] *actually misleads* . . . [another] by his own representations, *though innocently*, the maxim is justly applied to him, that where one of two innocent persons must suffer, he shall suffer, who, by his own acts, occasioned the confidence and the loss.'" *Colby v. Norton*, 19 Me. 412, 418 (1841).[3] (emphasis supplied)

■ Hence, to assure that petitioner's estoppel contentions are decided under a correct legal conception of the estoppel in pais principle, as a doctrine of fair dealing having applicability in workmen's compensation cases, *Norton v. Penobscot Frozen Food Lockers, Inc.*, supra, at p. 33, we must remand this case to the Commission for its reconsideration of the estoppel question in light of this opinion.

For the further guidance of the Commission in this regard, we think it advisable to make mention, also, of the legal principles under which the conduct of Nurse Farris, or others, becomes legally chargeable to Maplewood. We do this in specific relation to the Commission's particular finding of fact that Nurse Farris

> ". . . never had anything to do with [the] filing [of] . . . petitions"

for award of compensation.

■ Regardless of Nurse Farris' "actual" authority, Maplewood can become legally bound by virtue of

> "what . . . [petitioner], dealing with the agent, [Nurse Farris] believe[d] and . . . [had] a right to believe as to the agent's authority *from the acts of the principal*." *Frye v. E. I. duPont deNemours & Co.*, 129 Me. 289, 297, 151 A. 537, 541 (1930) (emphasis supplied)

See also: *Berman v. Griggs*, 145 Me. 258, 75 A.2d 365 (1950).

As bearing on such "apparent" authority, the record contains evidence—in the form of the testimony of Nurse Farris herself, of her superiors and of an insurance company sales manager—that Maplewood had allowed Nurse Farris for a considerable period of time to handle all compensation matters, with the exception of procurement and maintenance of the insurance coverage. In light of this evidence the Commission should evaluate whether, by such conduct, Maplewood had made it a reasonable appearance to persons like the petitioner that Nurse Farris had authority to represent Maplewood in all those matters. *Frye v. E. I. duPont deNemours & Co.*, supra.

---

3. Cases cited by Maplewood are not at odds with this conclusion. In *Wallace v. Booth Fisheries Corp.*, 135 Me. 336, 196 A. 406 (1938), the worker was held barred because he asserted as his excuse for the untimely filing of a petition that he relied on a *doctor's* prognosis that he would soon be better. The worker made no claim that acts or statements *attributable to the employer* (or its insurance carrier) were responsible for the fatal delay. See also: *Burpee v. Inhabitants of Town of Houlton*, 156 Me. 487, 166 A.2d 473 (1960). In *Norton v. Penobscot Frozen Food Lockers, Inc.*, supra, the injured worker failed to establish a causal link between the employer's conduct (voluntary payment of medical expenses incurred more than two years after the accident) and her late filing.

 By thus concentrating on the respects in which the conduct of Nurse Farris may bind Maplewood, we do not suggest that hers is the only conduct appearing of record which could be imputable to Maplewood and constitute a basis for the assertion of an estoppel against Maplewood. On the contrary the Commission itself acknowledged that others may have acted for Maplewood when it referred in its conclusory statement regarding estoppel to "anyone else who participated for Maplewood." This could reasonably be taken as a reference to the evidence that certain notices to employees had been posted pursuant to 39 M.R.S.A. § 26 [4] which announced in part:

> "If you receive a work-related injury, no matter how slight, NOTIFY YOUR EMPLOYER AT ONCE. You may lose your right to compensation unless your employer has knowledge of the injury *within 30 days* and you file your Petition *within two years* from the date of injury." (emphasis in original)

As the fact-finder, the Commission would have warrant to conclude that by the emphasis on reporting *to the employer*, rather than on filing a petition *with the Commission*, these notices reinforced the misrepresentations inadvertently made by Nurse Farris as the grounds for the assertion of an estoppel against Maplewood.

The entry is:

Appeal sustained.

Pro forma decree of the Superior Court vacated.

Case remanded to the Industrial Accident Commission for further proceedings.

It is further ordered that the Appellees Maplewood Packing Company and/or Liberty Mutual Insurance Company pay to the appellant Stefano Pino an allowance of $550.00 for his counsel fees, plus his reasonable out-of-pocket expenses for this appeal.

All Justices concur.

---

4. Section 26 requires employers to post notices in such form and concerning such matters as the Commission directs.