**Donald E. FOSTER**

v.

**DIAMOND INTERNATIONAL CORPORATION.**

Supreme Judicial Court of Maine.

Argued March 1, 1982.

Decided Sept. 8, 1982.

McTeague, Higbee & Tucker, James W. Case (orally), Maurice A. Libner, Patrick N. McTeague, Brunswick, for plaintiff.

Rudman & Winchell, Bruce C. Mallonee (orally), Michael P. Friedman, Bangor, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS and WATHEN, JJ.

ROBERTS, Justice.

Foster, an electrician at Diamond International's Old Town plant, was injured at work when a water tank which belonged to him exploded. The Workers' Compensation Commission concluded that Foster's injuries arose out of his employment but also concluded that his injuries did not occur in the course of his employment and denied Foster compensation benefits. Foster appeals from the pro forma decree entered in Superior Court, Penobscot County, arguing that the Commission erred in deciding that his injuries did not occur in the course of his employment. The employer, Diamond International Corporation has cross-appealed, arguing that the Commission erred in deciding that Foster's injuries arose out of his employment. Because we conclude that the evidence presented herein permits the judgmental determination of the Commission to deny compensation, we affirm the judgment below.

Foster was the only witness to describe the activities which resulted in his injury. Foster testified that he owned a home water tank in need of repair. Foster asked and received permission from the foreman of Diamond's plant yard maintenance crew to bring the tank to work. Foster also testified that it was a common practice for Diamond to allow plant employees to bring "home projects" to work.

Sometime after he had left the tank to be fixed, Foster and a co-worker passed through the part of the mill where his water tank was located. Foster noticed that the tank had been welded and that there was a soap solution on and around the weld. An air line attached to the tank was connected with an air system that ran throughout Diamond's plant. Foster, who was familiar with the air system and had occasion to use it in the performance of his duties, testified that the system usually carried thirty-five pounds per square inch of air. Foster asked his co-worker to turn on a valve of the air line in order that he could check the work. With the air turned on, Foster checked the weld. He then told his co-worker to turn off the valve at which point the tank exploded injuring Foster.

In his decision to deny compensation, the Commissioner relied upon *Wing v. Cornwall Industries,* Me., 418 A.2d 177, 179 (1980) in which we noted that "[i]t is . . . not enough . . . that the injury may be said to 'arise out of' the employment; it is further requisite that the sustaining of injury be particularly tied to a time, a place and the performance of employment duties, or the incidents thereof, such that the injury may be found to have originated 'in the course of' employ-

ment." Although the Commissioner found that the time and place conditions were here satisfied, he determined that at the time of his injury Foster was engaged in a self-benefiting activity not within the scope of his employment and, therefore, that the injury did not occur during Foster's performance of employment duties or the incidents thereof.

The Commissioner recognized that "self-benefiting activities by the employee to which the employer acquiesces or self-benefiting activities of the employee using tools of the employer with the employer's permission, have been held to be within the course of employment." Application of that concept was rejected on the ground that any express permission or acquiescence by the employer in this case was limited to "company welders [doing] personal welding work for other company employees" and did not "encompass any [other] employee being permitted to do any welding work on company property, employing company tools." The Commissioner justified the distinction between Foster and a company welder on the basis of the danger inherent in Foster's lack of welding expertise and Diamond's legitimate interest "in the safe conduct of such activities."

We have recently noted that the statutory requirement that an injury must both arise out of and in the course of employment is "deceptively simple and litigiously prolific." *Comeau v. Maine Coastal Services,* Me., 449 A.2d 362, 366 (1982) (quoting *Cardillo v. Liberty Mutual Insurance Co.,* 330 U.S. 469, 479, 67 S.Ct. 801, 807, 91 L.Ed. 1018, 1037 (1946)). Once again, we are asked to determine the legal consequences of the facts presented below as they relate to this statutory requirement. *See* 39 M.R.S.A. § 51. As in *Comeau,* we are here presented with a fact pattern which "does not fall snugly within the arising out of and in the course of employment requirement ...." 449 A.2d at 366 and our appellate function is limited to a determination of whether "legal error is evident in the decree." *Morton v. Greater Portland Transit District,* Me., 440 A.2d 8, 10 (1982).

Turning to the record presently before us, Foster's testimony indicated that it was common practice, for the twenty-eight years he had been employed by Diamond, for employees to bring "home projects," i.e., personal items in need of repair, to work. Over and above the evidence of this common practice or custom, was Foster's testimony that he had sought and received permission from the employer to bring this *particular* project to the plant. His testimony, however, was somewhat equivocal. Foster testified to the effect that he asked for and received permission to have "the welders" check the tank *and* that he asked for and received permission "to fix the tank."

The Commissioner concluded that the express permission given Foster "did not encompass any activities" by Foster in the process of fixing the tank and that evidence of acquiescence involved only welders doing "welding work." In practical effect the Commissioner determined that the evidence was insufficient to persuade him either (1) that Foster's participation was expressly permitted or (2) that Diamond had acquiesced in the particular activity in which Foster was engaged when he was injured. We cannot say that the evidence compelled any different conclusion.

The entry is:

Judgment affirmed.

It is further ordered that employer pay to the employee an allowance for counsel fees in the amount of $550 together with his reasonable out-of-pocket expenses for this appeal.

All concurring.